Thank you, your honor. May it please the court, my name is Dan Cooper from the firm of Cooper and Udall here in Tucson. I represent Christopher Preston. I was the lawyer at trial. I would like to reserve two minutes for rebuttal. Okay. This case is unusual because the appeal follows a retrial after this court reversed Mr. Preston's conviction in 2017. Many of the issues that made the first trial recurred here. It's a case that hinged on credibility and just like in the first trial, each error impacted the assessment of credibility. Prior to this trial, the Ninth Circuit, as noted in our brief, told the prosecutor in the first trial opinion that vouching had the district court so ordered. The order was ignored. I'd like to turn now to the direct examination, the redirect examination of the victim, alleged victim, Tim Rosenberg, in which the AUSA asked two separate questions. One, the first one was, were you lying to any of them? Talking to the officer that he had spoken to. And secondly, he asked a series of questions about when you met with me and then he, and also with Ms. Wang, who was the other assistant U.S. attorney on the case. You weren't lying to us. There was objections to that. However, I had, I read the transcript, but I'm not, I don't have it in front of me. Would you reread to me the transcript? What you just read was a statement. You are not lying to us. Is that what was, was that a state as a question? I'm not sure. I'm not sure we're quite on the same page with that yet. Your Honor, that was in our opening brief. That was a question slash statement by the prosecutor. And you weren't lying to us after discussing, uh, after discussing with the witness, uh, the fact that he had met with the agent, two agents and the two prosecutors prior to trial. Okay. My question to you is, was that a question or was that a statement? It was clearly a statement because he knew the answer. He knew the witness was not going to say, yeah, sure. I was lying to all of you. Lawyers ask, lawyers ask questions all the time to which they know the answer is merely because he knew the answer didn't mean it was a question. Well, except for it constituted vouching. That's the problem. It was, it was basically, uh, inappropriate to ask him if he's being truthful because it really wasn't the answer that he was looking for when he wanted to impress upon the jury is that when they had a meeting, when the, uh, the agents and the prosecutor had a meeting that this witness was telling them the truth, which was vouching, uh, for what the witness was going to say at trial. Uh, but why, I mean, I understand, you know, it's obviously vouching when the government lawyer says in argument, you know, I believe the government witnesses. Uh, but why is it, why is it vouching to ask the witness to affirm that he is telling the truth? I mean, that's implicitly what every witness is doing. I don't see how it's added by asking them that question. Yeah, you are actually in us versus Sanchez Lima. Uh, the agent was allowed to give his opinion on the credibility of another agent. Uh, that was air that was not harmless because it went directly to the credibility of the bolstered witness, which was considered vouching. I, as you indicated, you understand what happens in closing that also happened in this case, because then we get to closing and the prosecutor in closing stated these words, why do we think he is credible? The obvious answer is Tim himself. I would submit to you that he is a very credible witness. There could not be more obvious vouching followed up from his initial questioning of the witness. You weren't lying to us and you have textbook, textbook but we've, well, no, not quite because I mean, I would submit to you makes a difference. And we have cases that say that that makes a difference. That's, that's an argument. When you say, I would submit to you that it's not, you know, I am stating my opinion. It's, you know, you are asking the jury to infer that, right? Well, no, your honor, uh, phrases like I submit or I think do not magically transform vouching into non-vouching. What matters is whether the prosecutor's words in context express a belief in the credibility of the government witness. There's two cases in U.S. versus Kerr. I think he was honest, according to the ninth circuit affected the verdict. Again, in U.S. versus Flores, the government argued, I submit, I would hire this government witness. The court in both Kerr and Flores said, I think, and I submit still constitutes vouching even. And the other thing is your honor, when you say words like I submit, or, or, or I think that's expressing an opinion in the belief of credibility of the witness. Uh, and the prosecutor in this case in the, in the, in the closing said, why do we, why do we think he is credible? The obvious answer is Tim himself. The we is the government that is vouching. And the two, the cases that I cited all discuss, I think, or I submit, uh, as, as simply being, uh, you can't just magically say just because the government uses those words in place that it's not vouching. And in fact, the courts have said it was vouching. The key though, as I, as I just indicated is whether the words express a belief in the credibility of the government witness. That's I would submit to you that he is a very credible witness. Um, there's no other way to interpret it other than that. He's submitting, uh, that, that the government believes this person is honest, which is vouching. Uh, if, if, if you don't have any more questions on that issue, I'd like to, uh, discuss the redirect of Andrea Preston, uh, because the same thing happened with her. Uh, and as this court said previously, the entire case was about whether Tim was telling the truth after the court had discussed with Ms. Preston, uh, multiple instances of her inconsistencies. And she was a very inconsistent witness. Um, and after they had been pointed out during cross-examination, the prosecutor then in redirect attempted to mitigate the damage by asking her, are you making anything up or are you telling the truth? He knows she's not going to say I'm lying. This was a rhetorical question designed to show that the prosecutor would push this witness up there. And he believes she's credible. Again, that is vouching. The question that he asked here is none of the problems with her inconsistent testimony. It doesn't discuss them. He's telling the jury to ignore those inconsistencies because the government believes she isn't lying. The question was designed to rehabilitate her by putting the prestige of the government behind the witness. I understand, I understand your argument here. Uh, and I understand that, uh, the government and saying to the witness, uh, are you telling me the truth, uh, is trying to emphasize that the witness wants to say that the witness is telling the truth. Do you have case law that says a question to one of your own witnesses? So the government asking one of its own witnesses, are you telling me the truth? Do you have cases that say that that is vouching? Not of, well, in, in Sanchez Lima, the agent was asked his opinion of the credibility of another agent. Yeah, no, that's not what's, that's not what's going on here. No, no cases where the government lawyer, the prosecutor questioning witness says to the witness, are you telling me the truth? Knowing that the witness is going to say, yes, the witness does answer. Yes. Do you have a case that tells us that that's vouching? In all the cases, in all the briefs that we submitted, uh, your honor, uh, the, the issue is in a close case, in the battle of credibility, the real danger is the question. The real danger isn't in the answer because the question implies that the prosecutor and the government is supporting this witness and vouching for the credibility of the witness. But the answer to your question, there isn't a case strictly on point, but the, the clear implication of the the, the court held that the credible officer, the answer, the question was to the officer, uh, it's a battle of credibility. It poses a real danger to the, uh, right to a fair trial. The answer to your question though, is there's no specific case right on point other than all the vouching cases, which most of which I've cited, uh, similarly in U.S. versus Molina, uh, the U.S., the prosecutor may not express an opinion or belief in the credibility of a witness. And that's what that question does. That's the problem. Okay. Got it. I'd like to move on if I could, uh, to an intertwined, um, and I, okay. Well, what we are, we're at the, we're at the end of your time. I occupied you for a bit more time than perhaps you wanted to on the vouching question. Why don't we extend your time to, for another minute now, and then we'll give you a little chance for rebuttal. But if you'd like to make another argument quickly now, please go ahead. Well, quickly on, on two things, your honor, one is on the other act evidence. Uh, the fact that, that the government allowed, uh, Andrea Preston and Mr. Rosenberg to testify that Andrea, uh, 15 years earlier, after initially denying she'd ever said it, had called him a child molester. And I also point out that Ms. Preston, when she testified, said she had never, uh, ever, um, thought that there was anything, any problem with the relationship between Chris and, and Tim. Then at trial, she said, well, yeah, there was that time when I called him a child molester. Uh, this is irrelevant character evidence, and it, it was the worst kind. It unreasonably suggesting that she believed he was engaging in sexual activity with Tim. Didn't that answer come in a response to your question? Well, yes, your honor. Absolutely. But that was because Tim Rosenberg, when he testified, said this happened. So I absolutely had to question her because previously in the first trial, she said, no, I never said that. And then she changed her story completely in the second trial and said, oh yeah, right. Of course I said that. I remember now I said that. So the answer is yes, it came in response to what Tim Rosenberg had testified to. You know what, when I tried to impeach her with, you said you never said that. She changed her story and said, oh, right, yes, I did say it. So you're correct, your honor. The last thing I just wanted to mention was that the about, uh, the, the, the court limited my closing, which I've done this for obviously a long time, 44 years, 200 jury trials, 42 murder trials. I've never been limited in closing. And I gave a vapid muted closing in a case that required a fact oriented closing. I had 30 different issues. I wanted to point out of inconsistencies of Mr. Rosenberg. I wasn't able to do that because for whatever reason, and I love Judge Soto. I didn't make that clear. He's one of the three best trial judges I've ever been in front of, but even really good judges have bad days or bad weeks and limiting me and my closing was devastating. It really inhibited, uh, Mr. Mr. Preston's right to a fair trial. I gave a incredibly weak closing after the judge limited me and after I didn't do what I had anticipated doing. Thank you. Okay. Okay. And before you, before you sit down, could you just remind me what was the nature of the limitation that Judge imposed upon you? What happened was the, when the prosecutor gave his closing, I objected to his vouching and the judge told him don't vouch anymore. I got up and began demonstrating to the jury, the problems with Tim Rosenberg's testimony, the prosecutor got up, approached the bench and said, he can't do that. He's vouching. And I said, well, you know, your honor, I can't vouch. I'm not the government. And the judge said, well, just really what you're doing to say something about he's not present. That's what happened. Okay. No, no, no. I, I, that argument I did get. Okay. Thank you very much. Let's hear from the government. May it please the court. I'm Bob Miskell from the U S attorney's office in Tucson on behalf of the United States on the last thing about the limiting the defense is closing. Basically the court made the comments it made because the Mr. Cooper said, and I quote, and you know, this is my opinion. I'll tell you right now, strictly that the victim was not somebody, not someone testifying who had been molested by Chris Preston. It's improper for a defense counsel to state his opinion. The Supreme court has said that. So the court basically said, you know, basically stay to the credibility. Don't be giving your opinion that he didn't say it quite that explicitly, but that was the only limitation. And it did not stop Mr. Cooper from attacking the credibility of the witnesses. If you read the, his closing argument, he definitely was able to attack the credibility of the witnesses on the voucher. Defense counsel has identified three areas of vouching. The first one is questions to the witnesses about whether they themselves align simply doesn't meet the definition of vouching. It's a question. The defense, the witness provides the answer. So, and again, the questions are quoted in the brief. They're clearly questions. They're not, they're not statements by the prosecutor. He's asking the witness, are you lying today? Basically. And there are no cases that say that's improper. There are, there's a case, at least one case from another circuit that says it's totally proper to ask that question. So that part was fine. I submit is also not vouching. This court has said that in the Kajan case, in the neck of China case, the Flores case that Mr. Cooper referred to in that case, according to the opinion, the government did not rely on the Kajan case in conceded error. And the court assumed without deciding that it was an error. So the Flores case really doesn't help the defendant's argument any. And the law in this circuit is, I submit, is perfectly permissible argument. Let me ask you, let me ask you the following, if I may, coming out of your closing. I take it that you would agree with me that if you were to say to the jury, the government thinks that this witness is credible, that that would be vouching. And I'm therefore looking at it, I think it's ER 56152, where you are, are you, were you the trial lawyer or is this somebody else? It was somebody else. Somebody else. Yeah. So the prosecutor says, so let's talk about credibility of Timothy. Why do we think he's credible? Now, why do we think he's credible contains within an assumption that we think he's credible? Who's we? Sounds like it's the government. That sounds like the government had just said, we think Timothy's credible. That sounds like vouching to me. What's your response? My response is that I think in the, in this court's case, in the Alcantara Castillo case, where, when those kinds of statements are made, you have to look at them in context and in context, that comment is preceded immediately by the prosecutor telling the jury that it's up to them to determine the credibility. It's all a jury function. It's your job. That's what he tells them. So let's talk. Can I interrupt for just a minute? Let's assume I'm changing, I'm changing a little bit, but let's say the prosecutor says it's your job to determine credibility, but let me tell you what I think. I think he's credible. Now, the fact that you just said that the jury's job is determined, that that doesn't take away from the fact that you just vouched and told the jury, as you do your job in determining credibility, I want you to know that I think he's credible. That's vouching. And the fact that you told the jury what his job was doesn't excuse the fact that he's credible. Okay? And then you go on in the transcript, where he's, again, right after he says, why do you, why do we think he's credible? There's a whole series of why, you know, basically based on the evidence in the record, why the jury should find the witness credible, the victim credible. So, and the Alcantara Castillo case says, in that case, constitute improper vouching when the surrounding context suggests that this, despite the personal language, the prosecutor is drawing on inferences from evidence in the record rather than offering opinion. And that's exactly what's going on here. When you read it in context with the preface, that it's the jury's function. And then subsequent right after it, this is the evidence that supports the fact why you should find the, the witness credible. So in that case, the court, number one, it fits into the Alcantara Castillo case. And also the Supreme Court has said the court shouldn't put the worst spin on a prosecutor statement that could be interpreted in different ways. And this clearly is the prosecutor basically asking a rhetorical question as to why the jury should find the witness credible. Well, if that's what the said, why should you think he's credible rather than why do we think he's credible? Granted, but under the Alcantara Castillo case, what he said doesn't meet the level of vouching because of the context that it's in. Before you run out of time, could you address the, if there's a dispute as to whether it really is other act evidence, but what the defendant characterizes as other act evidence and specifically the defendant's wife's comment or ex-wife's comment that he was a child molester. Why isn't that essentially evidence of bad character that invites the jury to conclude that he must have committed this offense because he's the sort of person who even his wife thinks he's a child molester? Okay, the context I think is important here. Basically, the victim testified that the defendant's wife discovered that the defendant had viewed a movie about pornography with the 9-year-old victim, 9 or 10-year-old victim. They had an argument in a parking lot. During that argument, according to the victim, the wife called the defendant a child molester. Then the victim asked the defendant, does basically does the wife know what's going on between us? And the defendant said no. So basically, in the context of what's going on here, that's not to prove his character. It's offered to place in context the victim's question about does she know. It demonstrates the successfulness of the defendant's grooming of the victim and making sure that they had this secret between them of what actually was going on. And it also indicated or explained why the victim specifically remembered that incident. So it wasn't offered to prove character. The court actually decided, the court ruled, the trial court ruled, it wasn't 404B evidence. It was just part of the evidence relevant to the case, actually. And the court, it was not an abuse of discretion for the court to allow that in. And in any event, it was, again, considered in context. It was harmless because the evidence was strong. The testimony was the comment was made in anger. The wife's testimony also was that she didn't see anything unusual or abnormal between the in context, considering it in that context with the weight of the evidence, I think it was harmless. Unless the court has any other questions. Okay. I think no more questions from the bench. Okay. Thank you. Okay. Thank you. Mr. Cooper, would you like two minutes? I would, Your Honor. Thank you very much. The first thing I'd like to point out in context of the trial molester comment, there were two other problems, including the admission at trial of Barry, the testimony about Mr. Preston providing tobacco, alcohol, and pornography to Barry Rosenberg. None of that was ever provided to Tim. And it was evidence, allegedly, according to the state's expert, possibly a grooming. There was no evidence from Barry Rosenberg, anything sexual ever took place, ever. So it was really on a separate track from Tim. It was highly prejudicial. And even if marginally relevant, there was no 403 determination that should have kept it out. I'd also point out that- May I ask, did you make a 403 objection? I know both grounds, Your Honor. Okay. Yeah. I'd also like to quickly point out that the I submit issue that Mr. Miskell discusses, he decides co-agent as an example of I submit not being vouching. I submit was said by the defense attorney in that case. And the Ninth Circuit said, well, that's okay in the context of this case. The two cases that I've previously cited, however, provide examples of why I submit or I think don't take value into the realm of non-vouching. And it all has to do with the prosecutor expressing a belief in the credibility of the case. Finally, Your Honor, in my closing, I did not say it is my opinion, this man. I started attacking his credibility, which this case was all about. I was interrupted almost immediately after I started pointing out of credibility issues. And what happened then was the judge limited the rest of my closing. I see that my time is up. Thank you very much. I appreciate being here today. So thank both sides for your arguments. The case of United States versus Preston is now submitted for decision.
judges: W. Fletcher, Miller, Hunsaker